UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RAYMOND W. LYNCH,                        :
                    Petitioner,          :
        v.                               :
                                         :        CA 11-43 ML
WARDEN KETTLE,                           :
                    Respondent.          :

### REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

        Before the Court is the Petition under 28 U.S.C. § 2254 for
Writ of Habeas Corpus by a Person in State Custody (Docket ("Dkt.")
#1) (the "Petition") filed by Raymond W. Lynch ("Petitioner" or
"Lynch").  The State of Rhode Island (the "State") has moved to
dismiss the Petition.  This matter has been referred to me for
preliminary review, findings, and recommended disposition pursuant
to 28 U.S.C. § 636(b)(1)(B).  For the reasons stated herein, I
recommend that the State's Motion to Dismiss Petition for Writ of
Habeas Corpus (Dkt. #3) ("Motion to Dismiss" or "Motion") be
granted.

### Facts and Travel

        The facts as stated by the Rhode Island Supreme Court ("RISC")
in its consideration of Petitioner's appeal of his state conviction
are set forth below:

At the time of the precipitating incident, Mary[1] was sixteen years old and resided in Warwick, Rhode Island, with her parents, her younger sister, and younger brother. On Friday, September 20, 1996, Mary invited a friend from school, Michelle,[2] to sleep over at her house. The girls watched a movie together in Mary's bed, and then fell asleep.

Michelle testified at trial that she woke up to find defendant leaning over her and rubbing the upper part of the back of her thigh. She further testified that defendant told her, "[I]f you need a place to sleep, you can come sleep with me." Michelle immediately left the Lynch household and walked home. Michelle was described as "hysterical" when she arrived home. The police were called, and responded to her home with a rape crisis counselor.

On September 24, 1996, the next school day, Michelle met with Mary-Ellen Tillotson, a school psychologist. Michelle testified that she did so because she was concerned that defendant might be abusing Mary. Thereafter, Ms. Tillotson called Mary to her office. Ms. Tillotson testified that Mary initially said that she was not supposed to talk about what her father did to her when her mother was at work. Mary then said that defendant had sex with her "all the time" in the basement of their home. Ms. Tillotson immediately called the Warwick Police Department and the Department of Children, Youth, and Families and later drove Mary and Michelle to the police station.

The defendant was arrested that day. Several weeks later an indictment was filed charging him with three counts of first-degree sexual assault and two counts of second-degree sexual assault against Mary, one count of second-degree sexual assault and one count of simple assault against her younger sister, and one count of simple assault against Michelle. A jury convicted him of

---

[1] The names of the victim and all juveniles referenced in this opinion are fictitious. State v. Lynch, 854 A.2d 1022, 1028 n.1 (R.I. 2004) ("Lynch I"). As did the Rhode Island Supreme Court ("RISC"), see id. at 1028, this Court refers to the victim as "Mary."

[2] See n.1.

> the five counts involving Mary,[3] after which defendant
> filed a motion for a new trial, which was denied on May
> 8, 1998.  The trial justice sentenced defendant to sixty
> years, thirty to serve, on each of the first-degree
> sexual assault convictions, and ten years to serve on the
> two second-degree sexual assault convictions, all the
> sentences to run concurrently.

Lynch I, 854 A.2d 1022, 1028 (R.I. 2004)("Lynch I")(third

alteration in original)(footnote omitted).

Petitioner appealed his conviction to the RISC, raising

thirteen errors allegedly committed by the trial justice and also

arguing that the trial justice abused his discretion by denying

Petitioner's motion for a new trial.  Id.  That court rejected all

of Petitioner's arguments and affirmed the trial justice's denial

of Petitioner's motion for a new trial on August 12, 2004.  Id. at

1046.

On April 19, 2005, Petitioner filed an application for post-

conviction relief ("PCRA") in Kent County Superior Court.[4]  See

Petition at 4.  Petitioner contended that his constitutional rights

had been violated due to: 1) ineffective assistance of counsel; 2)

prosecutorial misconduct; and 3) insufficiency of the evidence.

See id.; see also Lynch v. State, 13 A.3d 603, 604 (R.I. 2011)

("Lynch II")(same).  The PCRA was denied after hearing on May 1,

---

[3] Petitioner Raymond W. Lynch ("Petitioner" or "Lynch") was
acquitted on the other charges.  See Lynch I, 854 A.2d at 1028 n.2.

[4] Petitioner had filed a prior post-conviction application for DNA
testing in September or October of 2004. See Petition under 28 U.S.C. §
2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition")
at 3.  That application was denied on March 9, 2007.  See id.

3

2007.   Petition at 4; see also Lynch II, 13 A.3d at 604. Petitioner appealed the denial to the RISC, which in a decision issued on February 4, 2011, rejected his ineffective assistance of counsel and prosecutorial misconduct arguments, see Lynch II, 13 A.3d at 605-07, and found that the doctrine of res judicata barred his insufficiency of the evidence claim as the court had addressed that contention on direct appeal, id. at 604.   Thereafter, Petitioner filed this action.[5]

The Petition was filed on February 10, 2011. See Dkt.  A day later, the State Attorney General was ordered to respond to the Petition.   See id.  It did so on March 7, 2011, by filing the instant Motion to Dismiss.  See id.  On March 17, 2011, Petitioner filed an objection to the Motion.   See id.   The State was subsequently directed to provide the transcript of Petitioner's trial if such transcript was available.  See Order for State to Furnish Transcript if Available (Dkt. #7).   The State filed the transcript ("Tr.") on April 25, 2011.  See Dkt.  On April 21, 2011, the Court conducted a telephonic hearing regarding the Motion, which hearing was continued to June 3, 2011.  See id.  Petitioner was present at the June 3rd hearing.   See id.   After hearing argument from both the State and Petitioner, the Court took the

---

[5] Petitioner had filed two previous applications for writ of habeas corpus in this Court.  See Petition at 12; see also Lynch v. Whitman, CA 07-83S; Lynch v. Weeden, CA 07-360ML.   Both were dismissed without prejudice because Petitioner had not yet exhausted his state court remedies.  See Petition at 12.

matter under advisement.

## Law

"The Antiterrorism and Effective Death Penalty Act ["AEDPA"] of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693, 122 S.Ct. 1843 (2002)(citing Williams v. Taylor, 529 U.S. 362, 403-04, 120 S.Ct. 1495 (2000)). As a result, a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court has been constrained. See Williams v. Taylor, 529 U.S. at 412. Under 28 U.S.C. § 2254(d), the writ may not be granted unless the state court's adjudication of the claim:

> (1) resulted in a decision that was **contrary to**, or involved an **unreasonable application of, clearly established Federal law,** as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an **unreasonable determination of the facts** in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(bold added); see also Rashad v. Walsh, 300 F.3d 27, 34 (1st Cir. 2002)(stating that a federal court may grant habeas relief for a state prisoner only if the state court proceeding falls within the parameters of either subsection).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. See Williams v. Taylor, 529

U.S. at 404-05; <u>Bell v. Cone</u>, 535 U.S. at 694. "[A] state court decision is considered contrary to Supreme Court precedent only if it either applies a test that is inconsistent with one announced by the Court or reaches the opposite conclusion on materially indistinguishable facts." <u>Rashad v. Walsh</u>, 300 F.3d at 34-35 (citing <u>Williams v. Taylor</u>, 529 U.S. 362). The "unreasonable application" clause affords relief to a state prisoner "if the state court applies the correct legal standard in an objectively unreasonable manner, unreasonably extends a Supreme Court precedent to an inappropriate context, or fails to extend such a precedent to an appropriate context." <u>Id.</u> at 35 (citing <u>Williams v. Taylor</u>, 529 U.S. at 407-08). In deciding whether a state court decision fits within the scope of this second clause, a federal court evaluates "the strength of the state court's ultimate conclusion, rather than its announced rationale ...." <u>Id.</u> (citing <u>Ouber v. Guarino</u>, 293 F.3d 19, 34 (1ˢᵗ Cir. 2002)). "Importantly, the test does not demand infallibility: a state court's decision may be objectively reasonable even if the federal habeas court, exercising its independent judgment, would have reached a different conclusion." <u>Id.</u> (citing <u>Williams v. Taylor</u>, 529 U.S. at 411; <u>Williams v. Matesanz</u>, 230 F.3d 421, 425 (1ˢᵗ Cir. 2000)). It is not enough that the federal habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application

must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. at 411, 120 S.Ct. at 1522; <u>accord</u> <u>Horton v. Allen</u>, 370 F.3d 75, 80 (1ˢᵗ Cir. 2004)("To be an unreasonable application of governing law, the state court's determination must not only be incorrect but also be objectively unreasonable.")(citing <u>Williams v. Taylor</u>); <u>McCambridge v. Hall</u>, 303 F.3d 24, 36 (1ˢᵗ Cir. 2002)(same).

The determination of whether the state court decision in question passes this test "must be decided primarily on the basis of Supreme Court holdings that were clearly established at the time of the state court proceedings." <u>Rashad v. Walsh</u>, 300 F.3d at 35 (citing <u>Williams v. Taylor</u>, 529 U.S. at 412). Nevertheless, cases from lower federal courts which are factually similar "may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." <u>Id.</u> (citing <u>Ouber v. Guarino</u>, 293 F.3d at 26; <u>O'Brien v. Dubois</u>, 145 F.3d 16, 25 (1ˢᵗ Cir. 1998)).

The AEDPA also permits relief from a state court judgment if that judgment is based on an unreasonable determination of the facts. <u>See</u> <u>id.</u> (citing 28 U.S.C. § 2254(d)(2)). However, "the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." <u>Id.</u> (quoting <u>Ouber v. Guarino</u>, 293 F.3d at 27; <u>see also</u> <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 7 (1ˢᵗ Cir. 2001) (stating that the standard applies only to the determination of

7

"basic, primary, or historical facts")).  Thus, the petitioner's

burden in this regard is "heavy," Rashad v. Walsh, 300 F.3d at 35,

and if he fails to carry it "a federal habeas court must credit the

state court's findings of fact--and that remains true when those

findings are made by a state appellate court as well as when they

are made by a state trial court," id. (citing King v. Bowersox, 291

F.3d 539, 540 (8ᵗʰ Cir. 2002); Everett v. Beard, 290 F.3d 500, 507

(3ʳᵈ Cir. 2002)).

## Discussion

Petitioner raises three grounds for relief in his Petition.

First, he alleges that his constitutional rights were violated due

to ineffective assistance of counsel.  See Petition at 5.  Second,

he argues that he was denied a fair trial and due process because

of prosecutorial misconduct.  See id. at 7.  Third, he contends

that he was also denied due process as a result of insufficient

evidence.  See id. at 8.  Petitioner asserts that the Petition

should be granted on the basis of both § 2254(d)(1) and (2).  See

Motion to Dismiss Defendant's Motion to Dismiss Petition for Writ

of Habeas Corpus ("Objection") at 2.

## I.    Ineffective Assistance of Counsel

Ground one pertains to the first-degree sexual assault-anal

charge.  See Petition at 5.  According to Petitioner:

> A rape crisis physical examination was performed on the
> mildly mentally-handicapped victim.  A 14-page report was
> filled out but not presented by the State or Defense
> attornies [sic] at [the] time of trial.  No physical

8

> trauma to the anus was presented (i.e.; "relaxation
> condition of the sphincter muscle"). No trauma noted in
> physical exam report, yet trauma would have had to be
> present if sexual penetrations alleged had occurred.
> Defense attorney Ronald Bonin failed to properly question
> examining Dr. McCue to properly dispute this charge, and
> the credibility of the victim in this case, by presenting
> the examination report in court; nor did he call any
> other medical expert in this area to dispute this charge
> properly.

Id.  Thus, Petitioner argues that for those reasons his attorney
"was ineffective ...," Objection at 3, and that, as a result, he
"was denied a chance to show that the lack of anal trauma may very
well be because the victim wasn't truthful on the stand," id. at 4.

"[T]he right to counsel is the right to the effective
assistance of counsel." Strickland v. Washington, 466 U.S. 668,
686, 104 S.Ct. 2052 (1984)(quoting McMann v. Richardson, 397 U.S.
759, 771 n.14, 90 S.Ct. 1441 (1970)).  A convicted defendant's
claim that counsel's assistance was so defective as to require
reversal of a conviction has two components. Id. at 687. The
defendant must show that: (1) counsel's performance was deficient;
and (2) the deficient performance prejudiced the defense.  Id.

> To establish deficient performance, a person
> challenging a conviction must show that counsel's
> representation fell below an objective standard of
> reasonableness.  A court considering a claim of
> ineffective assistance must apply a strong presumption
> that counsel's representation was within the wide range
> of reasonable professional assistance. The challenger's
> burden is to show that counsel made errors so serious
> that counsel was not functioning as the counsel
> guaranteed the defendant by the Sixth Amendment.

> With respect to prejudice, a challenger must
> demonstrate a reasonable probability that, but for

counsel's unprofessional errors, the result of the
proceeding would have been different. A reasonable
probability is a probability sufficient to undermine
confidence in the outcome. It is not enough to show that
the errors had some conceivable effect on the outcome of
the proceeding. Counsel's errors must be so serious as
to deprive the defendant of a fair trial, a trial whose
result is reliable.

Surmounting Strickland's high bar is never an easy
task. An ineffective-assistance claim can function as a
way to escape rules of waiver and forfeiture and raise
issues not presented at trial, and so the Strickland
standard must be applied with scrupulous care, lest
intrusive post-trial inquiry threaten the integrity of
the very adversary process the right to counsel is meant
to serve. Even under de novo review, the standard for
judging counsel's representation is a most deferential
one. Unlike a later reviewing court, the attorney
observed the relevant proceedings, knew of materials
outside the record, and interacted with the client, with
opposing counsel, and with the judge. It is all too
tempting to second-guess counsel's assistance after
conviction or adverse sentence. The question is whether
an attorney's representation amounted to incompetence
under prevailing professional norms, not whether it
deviated from best practices or most common custom.

Establishing that a state court's application of
Strickland was unreasonable under § 2254(d) is all the
more difficult. The standards created by Strickland and
§ 2254(d) are both highly deferential, and when the two
apply in tandem, review is doubly so. The Strickland
standard is a general one, so the range of reasonable
applications is substantial. Federal habeas courts must
guard against the danger of equating unreasonableness
under Strickland with unreasonableness under § 2254(d).
When § 2254(d) applies, the question is not whether
counsel's actions were reasonable. The question is
whether there is any reasonable argument that counsel
satisfied Strickland's deferential standard.

Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 787-88 (2011)

(internal citations and quotation marks omitted); see also Premo v.

Moore, __ U.S. __, 131 S.Ct. 733, 739-40 (2011)(quoting Richter);

Strickland, 466 U.S. at 687.

The "pivotal question," Richter, 131 S.Ct. at 785, for this Court is whether the state court's application of the Strickland standard was unreasonable, id. "This is different from asking whether defense counsel's performance fell below Strickland's standard." Id.

> Under AEDPA ... it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Id. (internal citation and quotation marks omitted). Under § 2254(d), a federal habeas court must determine what arguments or theories supported, or could have supported, the state court's decision. Id. at 786. It must then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision (here Strickland) of the Supreme Court.[6] Id. "A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision." Id. (internal quotation marks omitted).

Here, the RISC "adhere[d] to the two-part analytical approach articulated by the United States Supreme Court in Strickland v. Washington." Lynch II, 13 A.3d at 605 (internal citation omitted).

---

[6] The Supreme Court characterized this as "the only question that matters under § 2254(d)(1)." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 786 (2011)(quoting Lockyer v. Andrade, 538 U.S. 63, 71, 123 S.Ct. 1166 (2003)).

The court accurately summarized the standard, id. at 605-06, and found that:

> The applicant's ineffective-assistance contention simply does not pass muster under the Strickland standard. During the postconviction relief hearing, the trial justice noted that the decision to refrain from cross-examining Dr. McCue did not affect the outcome of the proceeding. He found that the issue ultimately was one of credibility; and, because Mary's testimony was found credible, the contention that cross-examining Dr. McCue would have had an impact on the verdict was "pure speculation."
>
> Regardless, even if defense counsel had established that the examination revealed no anal trauma, it does not follow that there was insufficient evidence of anal penetration to defeat the allegation, particularly in light of the victim's testimony. In passing on applicant's motion for a new trial, the trial justice noted that the victim was a credible witness and her testimony, standing alone, proved applicant's guilt beyond a reasonable doubt on each of the five counts charged. Because we are of the opinion that the failure to cross-examine Dr. McCue on this point was not error, nor did it prejudice applicant's defense in any way, his allegation of ineffective assistance of counsel necessarily must fail.

Id. at 606 (footnote omitted). The RISC addressed both the alleged deficiency of counsel's representation, see id. ("the failure to cross-examine Dr. McCue on this point was not error"); see also Strickland, 466 U.S. at 104, and any alleged prejudice to Petitioner, see Lynch II, 13 A.3d at 606 ("nor did it prejudice applicant's defense in any way"); see also Strickland, 466 U.S. at 104. Accordingly, this Court finds that the RISC's decision was not "contrary to ... clearly established Federal law ...," 28 U.S.C. § 2254(d)(1); see also White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005)("The ... court recognized Strickland as the governing

authority and framed its analysis accordingly.").

The Court further finds that the RISC's conclusion was reasonable. That court noted the trial judge's observation that Petitioner's contention that cross-examining Dr. McCue regarding the report would have had an impact on the verdict was "pure speculation." Lynch II, 13 A.3d at 606; see also Richter, 131 S.Ct. at 792 ("The likelihood of a different result must be substantial, not just conceivable."); Strickland, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."); Memorandum of Law in Support of Motion to Dismiss Petition for Writ of Habeas Corpus ("State's Mem."), Exhibit ("Ex.") 4 (Transcript of 5/1/07 hearing on Petitioner's PCRA) at 13 ("Now, you just can't fix on one phase of the case and say well, if he asked more question [sic] about anal penetration, maybe it could have been shown that she didn't, in fact, receive any penetration in that area. That is pure speculation."); cf. Richter, 131 S.Ct. at 789 ("Reliance on 'the harsh light of hindsight' to cast doubt on a trial that took place now more than 15 years ago is precisely what Strickland and AEDPA seek to prevent.")(quoting Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843 (2002)). The court further stated that the trial justice found the victim to be a credible witness and that "her testimony, standing alone, proved applicant's guilt beyond a reasonable doubt ...." Lynch II, 13 A.3d at 606. Given the "doubly," Richter, 1371 S.Ct. at 788, deferential standard

which AEDPA mandates this Court use in assessing claims of ineffective assistance of counsel, see id.; see also Premo, 131 S.Ct. at 741 ("AEDPA compounds the imperative of judicial caution."), the Court cannot say that the RISC's conclusion was unreasonable.   Cf. Premo, 131 S.Ct. at 745 ("The state postconviction court reasonably could have concluded that [the defendant] was not prejudiced by counsel's actions.  Under AEDPA, that finding ends federal review.").

In both his PCRA and his Objection to the instant Motion to Dismiss, Petitioner relies on State v. Bryant, 670 A.2d 776 (R.I. 1996), for the proposition that physical trauma, which he characterizes as "sphincter muscle relaxation condition," would have to have been present if anal penetration had occurred.  See State's Mem., Ex. 3 (PCRA) at 2; Objection at 3-4.  However, the issue in Bryant was whether the nurse practitioner who testified in the case of a five-year-old girl that sphincter-reflex relaxation would be caused only by sexual abuse or constipation, 670 A.2d at 781, was qualified to testify as an expert witness, id. at 782.[7] Nowhere does Bryant state that such evidence of trauma is required in any anal penetration case.  See generally 670 A.2d 776. Moreover, Bryant is distinguishable.  There, the victim was five years old.  Bryant, 670 A.2d at 778.  Here, the victim was at least

---

[7] The defendant in State v. Bryant, 670 A.2d 776 (R.I. 1996), also objected to the prosecution's reference in its closing argument to the reflex relaxation syndrome "as indicative of anal penetration 'on more than one occasion.'"  Id. at 782.

sixteen years old,[8] see Lynch II, 13 A.3d at 605; Lynch I, 854 A.2d at 1028, and it is undisputed that she had been sexually assaulted in the past, see Lynch I, 854 A.2d at 1034-40.[9]  Thus, Petitioner's reliance on Bryant is misplaced.

The Court finds that the RISC's decision was neither "contrary to," 28 U.S.C. § 2254(d)(1), nor an "unreasonable application of," id., clearly established federal law as determined by the U.S. Supreme Court in Strickland.  Accordingly, Petitioner's ineffective assistance of counsel claim fails.  See Richter, 131 S.Ct. at 790 ("In light of the record here there [is] no basis to rule that the state court's determination was unreasonable.").

## II.  Prosecutorial Misconduct

Petitioner argues that the "victim testified giving practiced testimony for the prosecution; she practiced with the prosecutor before trial.  This is prosecutorial misconduct and perjurious activity."  Petition at 7; see also State's Mem., Ex. 4 at 6 (same); Objection at 6-7 ("Petitioner claims that the victim was testifying at the trial after having practiced her testimony before the trial, and committed perjury with the prosecuting attorney.");

---

[8] Although the RISC referred to Mary as being sixteen years old, see Lynch I, 854 A.2d at 1028, Mary testified that she was born in 1978, which would make her seventeen or eighteen at the time of the incident in September of 1996, Transcript ("Tr."), Volume ("Vol.") I at 217.

[9] Evidence pertaining to the first of these assaults was excluded by the trial judge under the rape shield statute.  See Lynch I, 854 A.2d at 1034-46.  Evidence pertaining to the second, specifically hearsay statements from a detective investigating the alleged assault, was admitted.  See id. at 1036-40.  The RISC found such admission erroneous, but harmless error.  See id. at 1038-40.

id. at 7 ("The State deprived the Petitioner of his liberty through a deliberate deception of the court and jury by the presentation of testimony known to be perjured.")(internal quotation marks omitted).

The RISC addressed this claim in its denial of Petitioner's PCRA:[10]

> The applicant next contends that Mary rehearsed her testimony with prosecutors prior to trial, a practice that he contends amounted to perjury and prosecutorial misconduct. However, preparing a witness to testify at trial is an acceptable practice that often is used by both parties. Even assuming, *arguendo*, that Mary's testimony was practiced with the state's attorneys, such a circumstance would not have amounted to prosecutorial misconduct unless she was coached to testify untruthfully.

Lynch II, 13 A.3d at 606 (footnote omitted).

"To succeed on a claim of prosecutorial misconduct, the applicant must establish that the wrongdoing was 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Id. at 607 (quoting State v. Mastracchio, 612 A.2d 698, 703 (R.I. 1992)(quoting Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102)(1987))). The RISC found that "there was not a scintilla of evidence presented that the witness was coached or that the state engaged in misconduct ...." Id. The court, therefore, rejected Petitioner's contention, noting that it was "mindful that the trial justice found the witness's testimony

_____

[10] Petitioner states that he did not raise this claim in his direct appeal because "evidence was obtained after the appeal." Petition at 8.

credible ....”[11]   Id.   The court further noted that “[d]espite assertions at various proceedings that applicant has evidence to support this allegation, none has been presented.” Id. at 607 n.3; see also State’s Mem., Ex. 3 (PCRA) at 2 (“The applicant can present evidence of this.”).

The same is true here. Petitioner has provided no support for his allegations of improper conduct or perjured testimony. Petitioner admitted as much at the hearing, stating that he had not been able to present evidence regarding this claim because he would need to call the victim and, possibly, the prosecutor to testify. See Electronic Recording of 6/3/11 Hearing; see also Objection at 8 (“The Petitioner would need to call in the victim to testify, and possibly Mr. Al Medici, who prosecuted this case, and who the victim referred to as ‘her friend’ in the trial transcripts.”). Petitioner complains that “[n]o state court has allowed the Petitioner to present any evidence of this claim. The Petitioner needs to subpoena the victim to court to question her about comments she made to her mother in a telephone conversation in order to bolster this claim.” Objection at 7. However, the United States Supreme Court has made clear that “review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.” Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011); see also Sivo v. Wall, 644

---

[11] The court declined to address Petitioner’s allegation that Mary perjured herself through the prosecutors’ coaching because the trial justice found her testimony credible. Lynch II, at 607 n.4.

F.3d 46, 51 (1st Cir. 2011)("For habeas claims generally, the record is that developed in the state court.").  Accordingly, because there is no evidence that the State prosecutor(s) acted improperly or that Mary perjured herself, Petitioner's second claim of error also fails.  See Lynch II, 13 A.3d at 607 ("The applicant has not met the high burden of proving either prosecutorial misconduct or perjury, and thus his allegation necessarily must fail.").

## III. Insufficiency of the Evidence

Petitioner makes two arguments in support of his insufficiency of the evidence claim:

> (1) Charge of 2nd deg. sexual assault-breasts contains insufficient evidence in the testimonial record to prove guilt on all points of the law.  Appears to be evidence of a battery charge.  Record is devoid of facts and would require speculation on the part of the jury that an ambiguous touch's purpose was for sexual arousal or gratification.  There is no specific movement of hand or fingers (and no words were spoken), or anything else.

> (2) The vaginal and anal penetration charges consist of testimonial evidence which states that the defendant's "thing" is put ... "in the front and the back."  No specific mention of the penis, vagina, or anus is in the record to clarify what "... in the front and the back" means.  Sexual penetration is defined, in part, as "anal intercourse," yet the record is devoid of any clear reference to the victim's anus.

Petition at 9 (internal citations omitted).

"The clearly established law governing sufficiency of the evidence was set forth by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 ... (1979)." DeBurgo v. St. Amand, 587 F.3d 61, 68 (1st Cir. 2009).  In Jackson, the Supreme Court stated that:

> After <u>Winship</u>[12] the critical inquiry on review of the
> sufficiency of the evidence to support a criminal
> conviction must be not simply to determine whether the
> jury was properly instructed, but to determine whether
> the record evidence could reasonably support a finding of
> guilt beyond a reasonable doubt.  But this inquiry does
> not require a court to ask itself whether *it* believes
> that the evidence at the trial established guilt beyond
> a reasonable doubt.  Instead, the relevant question is
> whether, after viewing the evidence in the light most
> favorable to the prosecution, *any* rational trier of fact
> could have found the essential elements of the crime
> beyond a reasonable doubt.

<u>Jackson</u>, 443 U.S. at 318-19 (footnote, internal citation, and
internal quotation marks omitted); <u>see also</u> <u>Tash v. Roden</u>, 626 F.3d
15, 20 (1st Cir. 2010)("For a <u>Jackson</u> claim, [the defendant] must
show that no 'rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt,' even when
credibility determinations and competing factual inferences are
taken in favor of the verdict.")(internal citations omitted); <u>id.</u>
("[I]n practice the <u>Jackson</u> standard ... is rarely met where there
is plausible evidence to support a verdict."); <u>cf.</u> <u>Leftwich v.
Maloney</u>, 532 F.3d 20, 27-28 (1st Cir. 2008)("In order to pass muster
under sufficiency principles, evidence need neither compel a
finding of guilt nor rule out every hypothesis inconsistent with a
guilty verdict."). Moreover, "under <u>Jackson</u>, the assessment of the
credibility of witnesses is generally beyond the scope of review."
<u>Schlup v. Delo</u>, 513 U.S. 298, 330, 115 S.Ct. 851 (1995); <u>see also</u>
<u>DeBurgo v. St. Amand</u>, 587 F.3d at 68 (quoting <u>Schlup v. Delo</u>).

The RISC addressed Petitioner's insufficient evidence claim on

---

[12] <u>In re Winship</u>, 397 U.S. 358, 90 S.Ct. 1068 (1970).

direct appeal.[13]  See Lynch I, 854 A.2d at 1045-46.  The court first
summarized Petitioner's claim:

> The defendant ... contends that the evidence presented by
> the state did not prove every element of the first-or
> second-degree sexual assault counts beyond a reasonable
> doubt, violating the constitutional requirements set
> forth in In re Winship, and thus should be vacated and
> remanded for new trial.  In In re Winship, the United
> States Supreme Court held that the Due Process Clause of
> the Fourteenth Amendment to the United States
> Constitution denies the state the power to deprive the
> accused of liberty unless the state proves every element
> necessary to constitute the crime charged beyond a
> reasonable doubt.

Lynch I, 854 A.2d at 1045 (internal citation omitted).  The court
next noted that "[a] challenge to the sufficiency of the evidence
is properly framed in terms of a challenge to the trial justice's
denial of the defendant's motions for judgment of acquittal and new
trial."  Id.  Because Petitioner had not moved for a judgment of
acquittal, the court restricted its review to his motion for a new
trial.  Id. at 1046.

The RISC stated:

> In ruling on a motion for a new trial, the trial
> justice acts as a thirteenth juror and exercises
> independent judgment on the credibility of witnesses and
> on the weight of the evidence.  The trial justice must
> consider the evidence in light of the charge to the jury,
> determining his or her own opinion of the evidence,
> weighing credibility and choosing among conflicting
> testimony, and must determine whether he or she would
> have reached a different result than that reached by the
> jury.  Provided that the trial justice has articulated an

---

[13] Although Petitioner also raised the insufficiency of the evidence
claim in his PCRA, the court found that the doctrine of *res judicata*
barred him from raising it again.  See Lynch II, 13 A.3d at 604 ("Because
we addressed applicant's alleged insufficiency of the trial evidence on
direct appeal, *res judicata* bars Lynch from raising the issue again in
a postconviction-relief application.").

adequate rationale for denying a motion, a trial
justice's ruing on a new trial motion is entitled to
great weight.   A trial justice's ruling on a new-trial
motion will not be overturned unless the trial justice
was clearly wrong or unless he or she overlooked or
misconceived material and relevant evidence that related
to a critical issue in the case.

Lynch I, 854 A.2d at 1046 (internal citations and quotation marks

omitted).  The court continued:

   After an independent review of the evidence in this
case, the trial justice weighed the credibility of the
witnesses and other material evidence and determined that
his verdict as a juror was the same as that reached by
the jury.  In this case, the central issue was whether
Mary was a credible witness.  The trial judge considered
the inconsistencies and acknowledged that Mary suffered
from an impairment of her intellectual abilities and had
cognitive and communicative limitations.   The court
accepted Mary's testimony as credible, saying in part:

      "This is a case where the credibility of the
      principal witness, the complaining witness, cannot
      even be remotely assessed from the bare transcript
      of the intelligible words she uttered.  One had to
      be here watching and listening to realize that
      [Mary] was telling the truth."

   The trial justice added:

      [Mary] described a sexual horror story of her
      growing up years at the hands of her father.  Since
      the Court accepts as truthful everything she did
      and can readily further find that what she said
      proves the guilt of the defendant of each of the
      five counts on which he was found guilty beyond a
      reasonable doubt, there is absolutely no reason to
      retry this case."

Lynch I, 854 A.2d at 1046 (alterations in original).  Based on the

foregoing, the RISC "conclude[d] that the trial justice did not

overlook or misconceive any material evidence and was not otherwise

clearly wrong in his assessment of the evidence.   We therefore

affirm the judgment of the trial justice denying the defendant's

motion for a new trial." Id.

Petitioner claims that "the testimonial record contains insufficient evidence to find guilt on all points of the law to sustain a conviction of 2nd degree sexual assault—breasts." Objection at 8. According to Petitioner, "the transcript record shows evidence of an ambiguous touch of breasts. There is no 'intent to gratify or arouse sexually ....'" Id. (quoting State v. Messa, 594 A.2d 882, 884 (R.I. 1991)); see also Petition at 8 (noting that it "would require speculation on the party of the jury that an ambiguous touch's purpose was for sexual arousal or gratification"). The Court disagrees.

The victim testified as follows:

Q    -- what do you call your chest, the things on your chest?

A    Where my breasts are.

Q    Okay. Did anything ever happen with your breasts?

A    Yes.

Q    Can you tell me about that?

A    When he touched them.

Q    What did he touch them with?

A    His hands.

Q    How long would that last for?

A    For a while.

Tr., Volume ("Vol.") I at 244-45. The description of Petitioner touching the victim's breasts "[f]or a while," Tr., Vol. I at 245, belies Petitioner's claim of "an ambiguous touch of breasts,"

Objection at 8.  There is no reasonable explanation for Petitioner to have touched Mary's breasts "for a while" other than for sexual gratification or arousal.  Cf. Jackson, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  Thus, the Court finds that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime [of second-degree sexual assault] beyond a reasonable doubt."  Jackson, 443 U.S. at 319.

Petitioner's final contention, although phrased differently in his PCRA and Petition than in his brief to the RISC on direct appeal, fares no better.  In essence, it is a challenge to the sufficiency of the evidence pertaining to the first degree sexual assault convictions.  Petitioner asserts that "the transcript record contains insufficient evidence to find guilt beyond a reasonable doubt for the charges of 1st degree sexual assault—anal and —vaginal," Objection at 10, because of the lack of "specific mention of the penis, vagina, or anus ... in the record ...," Petition at 8.

First, the fact that Mary used the word "dick," Tr., Vol. I at 223, instead of "penis" is a distinction without a difference.  Clearly the witness, the jury, and the trial justice knew which

body part to which she was referring. "[F]actual determinations by the state court must be respected unless shown to be 'unreasonable.'" <u>Tash</u>, 626 F.3d at 18 (quoting 28 U.S.C. § 2254(d)(2)); <u>see also</u> <u>Sivo</u>, 644 F.3d at 49 (noting presumption of correctness of factual determinations by state trial and appellate courts)(citing <u>Clements v. Clarke</u>, 592 F.3d 45, 47 (1st Cir. 2010)). Equating the terms "dick" and "penis" is hardly unreasonable.

Second, Petitioner is incorrect in his assertion that Mary did not use the word "vagina." In testifying as to where Petitioner put his dick into her, Mary was asked:

> Q    Okay.  Where on your body into you?  What do you
>      call that part of your body?
>
> A    Vagina.

Tr., Vol. I at 223.  While Petitioner complains that she referred to her vagina as being "down near [her] feet," Objection at 10 (alteration in original), the record is clear that the witness stood and pointed to the location of her vagina on her body, Tr., Vol. I at 223-25, and also referred to Petitioner "sticking it in between [her] legs," <u>id.</u> at 222.

Third, although Petitioner is correct that Mary never used the word "anus," <u>id.</u> at 208-56; Tr., Vol. II at 258-314, when asked to explain what she meant by "[i]n the back of me," Tr., Vol. I at 228, she stated "[i]n the back of my butt," <u>id.</u>  Accordingly, the Court finds that the jury and trial justice reasonably concluded that she was referring to her anus.

The RISC stated that "[i]n this case, the central issue was

whether Mary was a credible witness." <u>Lynch I</u>, 854 A.2d at 1046.
The trial justice found that she was.   In denying Petitioner's
motion for a new trial, the trial justice stated:

> I accept as true the substance of everything that [Mary]
> testified to on the stand.   This case depended on the
> credibility of [Mary].   She was believable.   It was
> obvious that she suffered from an impairment of her
> intellectual abilities.   She had cognitive limitations.
> She had communicative limitations.   She did, however,
> have a clear capacity to communicate to this jury and
> this Court what had happened to her.   In her demeanor she
> appeared to be utterly without guile.   No one even
> remotely suggested any conceivable motive she might have
> had to have concocted the stories she told.
>   Put another way, this jury was fully justified in
> believing, if it did, as this Court does, that her
> impairments prohibited her from having the intellectual
> ability to have concocted the story which she told.   This
> is a case where the credibility of the principal witness,
> the complaining witness, cannot be even remotely assessed
> from the bare transcript of the intelligible words she
> uttered.   One had to be here watching and listening to
> realize that [Mary] was telling the truth.

Tr., Vol. IV at 14-15.   The trial justice found no reason to retry
the case since it "accept[ed] as truthful everything she did and
can readily further find that what she said proves the guilt of the
defendant of each of the five counts on which he was found guilty
beyond a reasonable doubt ...."   <u>Id.</u> at 15.   Given that   "under
<u>Jackson</u>, the assessment of the credibility of witnesses is
generally beyond the scope of review," <u>Schlup</u>, 513 U.S. at 330, and
that the state courts' factual determinations are entitled to
deference, <u>see</u> <u>Rashad v. Walsh</u>, 300 F.3d 27, 35 (1st Cir. 2002)
("[T]he state court's factual findings are entitled to a
presumption of correctness ...")(quoting <u>Ouber v. Guarino</u>, 293 F.3d
19, 27 (1st Cir. 2002)); <u>see also</u> <u>DeBurgo</u>, 587 F.3d at 71-72 ("we

are not reviewing the trial judge's decision directly.  Rather, the presumed correctness of the trial judge's factual findings can only be rebutted by clear and convincing evidence to the contrary"); id. at 72 ("That a different factfinder might have reached a different conclusion is not sufficient to reverse the state court's determination on habeas review."), the Court rejects Petitioner's third claim of error.

### Summary

The Court finds that the RISC did not act contrary to or unreasonably apply clearly established federal law, nor did it unreasonably determine the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d).  Further, the Court finds that, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt."  Jackson, 443 U.S. at 319.  Petitioner's three claims of error should, therefore, be rejected.  I so recommend.

### Conclusion

For the reasons stated above, I recommend that the Motion to Dismiss be granted.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's

decision.  See <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/  David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
September 15, 2011